UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH CARTER,

                               Plaintiff,

         v.

CAROLYN W. COLVIN,[1] Commissioner of
 Social Security,

                              Defendant.
_____

**REPORT**
**and**
**RECOMMENDATION**

**12-CV-0854A(F)**

APPEARANCES:         LAW OFFICES OF KENNETH HILLER
                          Attorneys for Plaintiff
                          JAYA ANN SHURTLIFF, of Counsel
                          6000 North Bailey Avenue
                          Suite 1A
                          Amherst, New York 14226

                          WILLIAM J. HOCHUL, JR.
                          UNITED STATES ATTORNEY
                          Attorney for Defendant
                          MARY K. ROACH
                          Assistant United States Attorney, of Counsel
                          Federal Centre, 138 Delaware Avenue
                          Buffalo, New York 14202, and

                          STEPHEN P. CONTE
                          Regional Chief Counsel - Region II
                          JASON P. PECK
                          Assistant Regional Counsel
                          United States Social Security Administration
                          Office of the General Counsel, of Counsel
                          26 Federal Plaza, Room 3904
                          New York, New York 10278

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on December 6, 2012.  (Doc. No. 7).  The matter is presently before the court on motions for judgment on the pleadings, filed on May 6, 2013, by Defendant (Doc. No. 9), and on October 27, 2013, by Plaintiff (Doc. No. 12).

## BACKGROUND

Plaintiff Joseph Carter ("Plaintiff" or "Carter"), seeks review of Defendant's decision denying him Social Security Disability Insurance Benefits ("SSDI") under, Title II of the Social Security Act ("the Act"), and Supplemental Security Income Benefits ("SSI") benefits under Title XVI of the Act ("disability benefits").  In denying Plaintiff's application for disability benefits, Defendant determined Plaintiff had the severe impairments of ruptured anterior cruciate ligament ("ACL") of the left knee, complete meniscus tear, moderate to advanced osteoarthritis, degenerative disc disease of the lumbar spine, and obesity.  (R. 16). [2]  Defendant further determined that Plaintiff's statements concerning the intensity, persistence and limiting effects  of the severity of Plaintiff's symptoms were not credible to the extent alleged.  (R. 18).  As such, Defendant determined that Plaintiff was not disabled under Title II of the Act from the alleged date of disability onset on January 24, 2007, until Plaintiff's last date insured[3] on December 31, 2008.  (R. 23).  Defendant further determined that Plaintiff became disabled under Title XVI of the Act as of October 2, 2009.  *Id.*

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.
[3] *See* 20 C.F.R. § § 404.130, 404.132.

## PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits on August 25, 2008 (R. 125), alleging disability based on lower back pain, right ankle, and left knee impairments as of January 24, 2007.  (R. 16).  Plaintiff's applications were initially denied by Defendant on November 14, 2008 (R. 69), and, pursuant to Plaintiff's request filed January 22, 2009 (R. 81), a hearing was held before Administrative Law Judge Robert T. Harvey ("Harvey" or "the ALJ") on September 9, 2010, in Buffalo, New York.  (R. 28-66). Appearing and testifying at the hearing was vocational expert Jay Steinbrenner ("Steinbrenner" or "the VE").  (R. 60-66).  Plaintiff, represented by Joseph Clark, Esq., ("Clark"), also appeared and testified at the hearing.  *Id.*  On September 22, 2010, the ALJ denied Plaintiff's Title II claim in its entirety, finding Plaintiff disabled as of October 2, 2009, under Plaintiff's Title XVI claim.  (R. 23).  Plaintiff seeks benefits for the period between January 24, 2007 and the date Plaintiff was deemed disabled on October 2, 2009.

On November 24, 2010, Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 9).  The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on July 10, 2012.  (R. 1-4). This action followed on September 6, 2012, with Plaintiff alleging the ALJ erred by failing to find him disabled prior to October 2, 2009.  (Doc. No. 1).

Defendant filed an answer on December 5, 2012 (Doc. No. 6), and on May 6, 2013, filed a motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 9) ("Defendant's Memorandum").  Plaintiff filed a

motion for judgment on the pleadings ("Plaintiff's motion") on October 27, 2013,
accompanied by a supporting memorandum of law (Doc. No. 12) ("Plaintiff's
Memorandum").  Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be GRANTED; Plaintiff's
motion should be DENIED, and the Clerk of the Court should be directed to close the
file.

## FACTS[4]

Plaintiff Joseph Carter ("Carter" or "Plaintiff") was born on December 29, 1962
(R. 125), completed grade 11 in high school (R. 31), lives alone (R. 150), and has four
children.  (R. 31).  Plaintiff worked most recently as factory worker (R. 133), until May
27, 2003 when Plaintiff stopped working allegedly because Plaintiff's back, ankle, and
left knee impairments rendered Plaintiff unable to perform the required work.  (R. 141).

Relevant to Plaintiff's alleged onset date of disability of January 24, 2007 (R. 29),
on August 26, 2008, Donald J. Nenno, II, M.D. ("Dr. Nenno"), physically examined
Plaintiff for right foot and ankle pain (R. 425), diagnosing Plaintiff with bilateral pes
planus (outward deviation of the foot) with heel valgus (outward heel angulation), and
measured Plaintiff's dorsiflexion range of motion at 10 degrees, plantar flexion at 30
degrees, with no inversion (inward turning) or eversion (outward turning).  (R. 425).  Dr.
Nenno noted Plaintiff's previous ankle fusion surgery completed on October 24, 2001,
appeared to have healed satisfactorily, and assessed Plaintiff with a moderate
permanent disability.  *Id.*

---

[4] Taken from the pleadings and the administrative record.

On September 10, 2008, Plaintiff visited Good Neighbors Health Care ("Good Neighbors clinic"), a health clinic in Buffalo, New York, with complaints of urinary burning and no ankle or foot pain.  (R. 423).

On November 5, 2008, Jacob Piazza, M.D. ("Dr. Piazza") completed a consultative internal medical examination on Plaintiff on behalf of the Social Security Administration, and assessed Plaintiff with abnormal gait and limp while walking with or without assistance of a cane (R. 406), but no difficulty removing his shoes or socks.  (R. 407).  Dr. Piazza assessed Plaintiff with full extension, flexion, and rotary movement of the lumbar spine, noting Plaintiff exaggerated his inability to complete Dr. Piazza's suggested postures for range of motion measurement purposes, and Plaintiff's resistance to complete postural positions for purposes of Dr. Piazza's hip range motion assessment.  *Id.*  Dr. Piazza opined Plaintiff's right ankle impairment was less serious than Plaintiff alleged, and that Plaintiff's lack of cooperation in completing range of motion exercises made it difficult to assess the severity of Plaintiff's lower back impairment.  (R. 408).  Dr. Piazza assessed Plaintiff with mild to moderate limitation to walking and standing, mild limitation to bending and lifting, no indication that Plaintiff had any problems with his knees (R. 408), and diagnosed Plaintiff with status post right ankle surgery, chronic lower back and left knee pain, and hypertension.  (R. 408).  At that time, Plaintiff's reported activities of daily living included cooking, cleaning, laundry, watching television, listening to the radio, socializing with friends, and a hobby of model cars.  (R. 406).

On November 5, 2008, Jitendra M. Sanghvi, M.D. ("Dr. Sanghvi"), completed an X-ray of Plaintiff's lumbar spine that showed moderate degenerative disc disease at

Plaintiff's L4-L5[5] disc space with anterior osteophytes (bone spur), and slight narrowing of Plaintiff's L5-S1[6] disc space.  (R. 409).  An X-ray of Plaintiff's left knee showed mild osteoarthritis on the medial side of Plaintiff's left knee, two calcified densities consistent with loose bodies in Plaintiff's left knee joint, and a small linear calcific density along the medial condyle (protruding bone) of Plaintiff's femur resulting from a previous injury to Plaintiff's medial collateral ligament ("MCL").  *Id.*

On November 7, 2008 and December 8, 2008, Plaintiff visited Good Neighbors clinic for blood pressure screenings.  (R. 422).

On November 14, 2008, C. Cusmano, a single decision maker with the Social Security Administration, completed a residual functional capacity assessment of Plaintiff and assessed Plaintiff with the ability to occasionally lift or carry up to 20 pounds, frequently lift or carry up to 10 pounds, and stand, sit or walk up to six hours in an eight hour workday, with unlimited ability to push or pull.  (R. 411).

On May 21, 2009, Alicia Hermogenes, M.D. ("Dr. Hermogenes"), physically examined Plaintiff, diagnosing Plaintiff with vertigo, unspecified chest pain, arthralgia, hypertension, and joint pain.  (R. 454).

On July 10, 2009, Dr. Nenno completed a medical statement on behalf of Plaintiff's attorney, assessing Plaintiff with the ability to walk one block at a reasonable pace on rough or uneven surfaces, climb a few steps at a reasonable pace with the use of a single handrail, no limitation to standing, and ability to engage in physical activity as tolerated.  (R. 444).

---

[5] L4-L5 represents a numbered lower back disc segment that relates to a location in the lumbar spine. *See* http://spine-health.com/conditions/back-pain/spinal-cord-and-spinal-nerve-roots.
[6] L5-S1 represents a numbered lower back segment that relates to the fifth vertebra of the lumbar spine, and first vertebra of the sacral region of the spine.  *See* http://spine-health.com/conditions/back-pain/spinal-cord-and-spinal-nerve-roots.

On August 18, 2009, Plaintiff visited Dr. Hermogenes for left wrist pain (R. 461), where a left wrist X-ray revealed normal results. *Id.*

On September 10, 2009, Dr. Hermogenes completed a follow-up medical examination on Plaintiff, noting that Plaintiff's knee was swollen but not red, and opined that Plaintiff's vertigo had improved with medication. (R. 462).

On October 2, 2009, the date upon which Plaintiff has been determined to be disabled, Plaintiff visited Dr. Hermogenes after falling down stairs a week earlier. (R. 450). Dr. Hermogenes referred Plaintiff for left ankle magnetic resonance imaging ("MRI"), where Scott P. Cholewinski, M.D. ("Dr. Cholewinski"), reviewed Plaintiff's left ankle MRI and diagnosed Plaintiff with no fracture or bone contusion, mild ankle tendon inflammation with no evidence of tear, extensive post traumatic subcutaneous edema of the upper side of Plaintiff's foot with no soft tissue hematoma (blood-filled swelling), and mild chronic anterior ligament sprain. *Id.* A left knee X-ray completed the same day revealed complete rupture of Plaintiff's left anterior cruciate ligament ("ACL"), complex tear of Plaintiff's lateral meniscus, grade one sprain of Plaintiff's MCL, small joint effusion, moderate to advanced osteoarthritis, and two non-ossified loose bodies adjacent to Plaintiff's lateral meniscus. (R. 451).

On November 3, 2009, Plaintiff returned to Dr. Nenno who assessed Plaintiff with mild decreased left knee range of motion upon flexion and extension. (R. 475). Dr. Nenno diagnosed Plaintiff with left knee arthritis compounded by lower back symptoms, and treated Plaintiff's knee pain with a cortisone injection. *Id.*

On December 3, 2009, Plaintiff returned to Dr. Hermogenes with symptoms of knee pain, where, upon examination, Dr. Hermogenes diagnosed Plaintiff with vertigo,

knee, ankle, and foot arthralgia, unspecified chest pain, and benign essential hypertension. (R. 456). Dr. Hermogenes noted that Plaintiff reported being advised he may require total knee replacement. *Id.*

On December 14, 2009, Phillip R. Sullivan, M.D. ("Dr. Sullivan"), completed a cardiac catheterization (angioplasty) procedure on Plaintiff after Plaintiff reported chest discomfort for a week. (R. 521). Dr. Sullivan reported Plaintiff's angioplasty procedure revealed normal cardiac arteries, and opined Plaintiff's chest pain was not the result of large vessel coronary atherosclerosis. *Id.*

On June 25, 2010, Plaintiff underwent lumbar MRI that Dr. Cholewinski opined revealed mild degenerative disc disease of Plaintiff's L4-L5 disc space with small right paracentral posterior disc herniation mildly effacing Plaintiff's thecal sac, annular tear, spondylolisthesis (forward vertebral displacement), mild spinal canal stenosis (narrowing), and mild bilateral neural foraminal narrowing of Plaintiff's L3-L4 disc space with bilateral facet arthropathy (joint disease) of Plaintiff's L5-S1 disc space. (R. 525).

## DISCUSSION

1.  **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . .. An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of
substantial gainful work which exists in the national
economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform

any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant. *Parker v.*

*Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

**A.   Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a

reasonable person would "accept as adequate to support a conclusion." *Consolidated*

*Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical

facts, diagnoses or medical opinions based on these facts, subjective evidence of pain

or disability (testified to by the claimant and others), and . . . educational background,

age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983)

(quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating

physician is supported by medically acceptable techniques and results from frequent

examinations, and the opinion supports the administrative record, the treating

physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567

(2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).  The Commissioner's

final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[7] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant

---

[7] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

with such an impairment is unable to perform substantial gainful activity.[8] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was

---

[8] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

substantial evidence on which the Commissioner based the decision.  20 C.F.R. §

416.935(a); *Richardson*, 402 U.S. at 410.

**B.**    <u>**Substantial Gainful Activity**</u>

The first inquiry is whether the applicant engaged in substantial gainful activity.

"Substantial gainful activity" is defined as "work that involves doing significant and

productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b).

Substantial work activity includes work activity that is done on a part-time basis even if it

includes less responsibility or pay than work previously performed.  20 C.F.R. §

404.1572(a).  Earnings may also determine engagement in substantial gainful activity.

20 C.F.R. § 404.1574.  In this case, the ALJ concluded Plaintiff had not engaged in

substantial gainful activity since July 24, 2007, the alleged onset date of disability.  (R.

16).  Plaintiff does not contest this determination.

**C.**    <u>**Severe Physical or Mental Impairment**</u>

The second step of the analysis requires a determination whether the disability

claimant has a severe medically determinable physical or mental impairment that meets

the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits

the claimant's ability to do "basic work activities."  If no severe impairment is found, the

claimant is deemed not disabled and the inquiry ends.  20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do

most jobs," and includes physical functions like walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and

speaking; understanding, carrying out, and remembering simple instructions; use of

judgment; responding appropriately to supervision, co-workers and usual work

situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b).  The step two analysis may do nothing more than screen out *de minimus* claims,  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work.  *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("S.S.R.") 85-28, 1985 WL 56856).

In this case, the ALJ determined Plaintiff had the severe impairments of ruptured left knee ACL, complete meniscus tear, moderate to advanced osteoarthritis, degenerative disc disease of the lumbar spine, and obesity.  (R. 16).  20 C.F.R. § 404.1520(c) ("§ 404.1520(c)").  Plaintiff does not contest the ALJ's finding that Plaintiff's impairments are severe.

**Period of disability**

Plaintiff does not contest the ALJ's finding that Plaintiff was disabled as of October 2, 2009, based on Plaintiff's left knee impairment, but contests the ALJ's finding that Plaintiff was not disabled based on Plaintiff's left knee and back impairments between January 24, 2007 and October 2, 2009, the date Plaintiff was determined to be disabled.  Plaintiff's Memorandum at 9.

To be eligible for SSDI benefits, a claimant must be deemed disabled while having insured status as determined by the S.S.A. based on the number of years spent in the workforce.  *See Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  To

establish a period of disability for SSDI, a disability claimant must have insured status in the quarter in which claimant becomes disabled. [9]   20 C.F.R. § 404.131(a).

In this case, Plaintiff filed his applications for SSI and SSDI on July 28, 2007, alleging disability beginning on January 24, 2007(R. 125), and the ALJ determined that Plaintiff meets the insured status requirements for SSDI through December 31, 2008. (R. 16).   Thus, the relevant term for SSDI review at issue in this case is the period between January 24, 2007 and December 31, 2008.   Review of Plaintiff's eligibility for SSI benefits, benefits based on financial need, is limited to the closed period between January 1, 2009, the day after the date Plaintiff was last insured, and October 2, 2009, the date which the ALJ determined Plaintiff was disabled.

## D.   Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").   If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.   20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").   The relevant listing of impairments in this case includes 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 §1.02 ("1.02") ("Major Dysfunction of a Joint"), and 20 C.F.R. Pt. 404, Subt. P, Appendix 1, §1.04 ("§ 1.04") ("Disorders of the Spine").

---

[9] Insured status applies only to a disability claimant's SSDI benefits.   *See* 42 U.S.C. § 414(a).

In the instant case, the ALJ determined that Plaintiff's left knee and back impairments do not meet or equal the criteria necessary to establish disability under §§ 1.02, or 1.04 between July 24, 2007 and October 2, 2009 (the date the ALJ determined Plaintiff was disabled as a result of Plaintiff's left knee impairment).  (R. 17).  Plaintiff does not contest the ALJ's determination that Plaintiff was disabled as a result of Plaintiff's left knee impairment beginning on October 2, 2009, but contends substantial evidence supports that Plaintiff was disabled for the period between July 24, 2007 and October 2, 2009.  Plaintiff's Memorandum at 9.  In Particular, Plaintiff points to a gap in the record for the period between December 2006 and August 2008 to support such contention.  Plaintiff's Memorandum at 8.  Plaintiff's contention is contrary to substantial evidence in the record.

The relevant regulations provide that the burden to establish disability rests with the claimant:

In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis.  We will consider only impairment(s) you say you have about which we receive evidence.

20 C.F.R. § 404.1512(a).

It is the disability claimant's responsibility to provide a complete record to support the claimant is disabled.  20 C.F.R. § 404.1512(c).  Moreover, substantial evidence supports the ALJ's determination that substantial evidence supports Plaintiff was not disabled for the relevant period of review in this case.

In particular, on August 26, 2008, Dr. Nenno completed a follow-up examination on Plaintiff and assessed Plaintiff with bilateral pes planus with heel valgus, noting that Plaintiff's previous ankle fusion surgery appeared to have healed satisfactorily.  (R. 425).  On September 10, 2008, Plaintiff visited Good Neighbors clinic with no ankle or foot pain.  (R. 423).  On November 5, 2008, Dr. Piazza's internal medical examination of Plaintiff showed Plaintiff was capable of performing activities of daily living (R. 406), and Plaintiff exhibited normal range of motion.  (R. 408).  An X-ray of Plaintiff's lumbar spine on November 5, 2008 revealed moderate degenerative disc disease with slight narrowing at Plaintiff's L5-S1 disc space, and mild osteoarthritis of Plaintiff's left knee.  (R. 409).  On November 5, 2008, Dr. Piazza completed an internal medical examination on Plaintiff and opined that Plaintiff had exaggerated his inability to complete lumbar and shoulder range of motion exercises during the examination, and complained of ankle sensitivity "much more than one would expect."  (R. 407).  Dr. Piazza assessed Plaintiff with an ankle problem less than Plaintiff reported, mild limitation for bending and lifting and no indication of knee problems   (R. 408).  Plaintiff's visits to Good Neighbors clinic on November 7, 2008, and December 8, 2008, showed Plaintiff with no foot or ankle pain.  (R. 422).  On July 10, 2009, Dr. Nenno opined Plaintiff was able to walk a block at a reasonable pace, and engage in activity as tolerated.  (R. 444).  The ALJ's determination that Plaintiff was not disabled for the period between January 24, 2007, and October 1, 2009 (R. 23), is thus supported by substantial evidence and Plaintiff's motion on this issue should be DENIED.

**Credibility of Plaintiff's Subjective Complaints**

Nor, as Plaintiff's contends (Plaintiff's Memorandum at 4-7), did the ALJ fail to properly consider Plaintiff's subjective complaints. Specifically, the ALJ, as required, evaluated Plaintiff's impairments under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, and determined that although the record established Plaintiff had the severe impairments of ruptured left knee ACL, complete meniscus tear, moderate to advanced osteoarthritis, degenerative disc disease of the lumbar spine, and obesity, the Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to the extent it was inconsistent with Plaintiff's testimony after October 2, 2009, the date the ALJ deemed Plaintiff was disabled. (R. 18-20). Plaintiff argues the ALJ's credibility determination fails to consider the factors required under Social Security Ruling 96-97p ("S.S.R. 96-97p"), Plaintiff's Memorandum at 6, and that the ALJ's residual functional capacity findings for the period beginning on October 2, 2009, is inconsistent with the ALJ's residual functional capacity assessment of Plaintiff for the closed period for which Plaintiff seeks benefits.  *Id.*

It is the function of the ALJ, not the court, to assess the credibility of witnesses. *See Tankisi v. Commissioner of Social Security*, 521 Fed. Appx. 29, 35 (2d Cir. 2013). Pain or other symptoms may be important factors contributing to a disability claimant's functional loss and may affect a claimant's ability to perform basic work activities if relevant medical signs or laboratory findings show the existence of a medically determinable impairment that could "reasonably" be expected to cause the associated pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).  "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical

evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms"  *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)).

In this case, substantial evidence supports the ALJ's determination that Plaintiff's allegations of pain prior to October 2, 2009, are less than credible.  Specifically, on July 10, 2009, Dr. Nenno completed a medical statement on behalf of Plaintiff's attorney noting Plaintiff was able to walk a block at a reasonable pace on rough or uneven surfaces, and opining Plaintiff experienced moderate pain, and could engage in activity as tolerated.  (R. 444).  On November 3, 2009, Dr. Nenno assessed Plaintiff with mild decreased left knee range of motion, and diagnosed Plaintiff with left knee arthritis complicated by lower back symptoms.  (R. 475).  The ALJ considered, in contrast, Dr. Piazza's November 5, 2008 opinion that Plaintiff used, but did not medically require, a cane (R. 406), and that Plaintiff had exaggerated his restricted range of motion during Dr. Piazza's physical examination of Plaintiff.  (R. 19).

As such, substantial evidence supports the ALJ's credibility determination, and Plaintiff's motion on this issue should be DENIED.

## E. "Residual Functional Capacity" to Perform Past Work

The fourth inquiry in the five-step analysis is whether the applicant has the residual functional capacity ("RFC") to perform past relevant work. "Residual functional capacity" is defined as the capability to perform work comparable to the applicant's past substantial gainful activity.  *Cosme v. Bowen*, 1986 WL 12118, at *3 (S.D.N.Y. Oct. 21, 1986).

In this case, the ALJ determined that Plaintiff had the residual functional capacity to occasionally lift/carry 10 pounds, stand or walk two hours in an eight hour workday, sit six hours in an eight hour workday, no work in areas with unprotected heights, or around heavy, moving or dangerous machinery, no exposure to temperature extremes, ropes, ladders or scaffolds, with occasional limitation to bending, climbing, stooping, squatting, kneeling, balancing, and crawling, and pushing or pulling with upper extremities.  (R. 20).  This RFC is less than was required of Plaintiff's past relevant work.  Plaintiff does not contest this finding.

## F. Suitable Alternative Employment in the National Economy

Because Plaintiff seeks SSDI only for the closed period from July 28, 2007 to October 2, 2009, the date on which the ALJ found Plaintiff was disabled, the court's inquiry into whether substantial evidence in the record supports the ALJ's determination is limited to that period.

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, and does not have the residual functional capacity to perform past work, 20 C.F.R. § 404.1520(a)(4)(iv), the Commissioner must prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training.  *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).  To make such a determination, the Commissioner must first show that the applicant's impairment

or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.[10] *Decker*, 647 F.2d at 294. In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[11] *Id.* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and

---

[10] "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools....Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[11] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

supersede the requirement of vocational expert testimony regarding specific jobs a claimant may be able to perform in the regional or national economy.  *Heckler  v. Campbell*, 461 U.S. 458, 462 (1983).

In this case, at the September 9, 2010 hearing, the ALJ posed hypothetical questions to the VE that included Plaintiff's exertional and nonexertional limitations.  In particular, the ALJ posed a hypothetical that includes an individual able to lift or carry 10 pounds, sit six hours in an eight hour workday, stand or walk two hours in an eight hour workday, no work in unprotected heights, around heavy, moving or dangerous machinery, no climbing ropes, ladders or scaffolds, with occasional limitation to bending, climbing, stooping, squatting, kneeling, balancing, crawling, pushing or pulling with the upper extremities, or exposure to temperature extremes and not able to complete a normal workday because of pain,  such limitations which the VE opined would preclude Plaintiff from performing Plaintiff's past relevant work.  (R. 61). The ALJ then altered the hypothetical to include an individual capable of sedentary work with all of the previously posed limitations except the ability to complete a normal workday, to which the VE opined there would be jobs available that Plaintiff could perform in the national and regional economies.  (R. 64).  The VE reviewed Plaintiff's credentials and limitations and concluded that substantial gainful employment opportunities exist for an individual of the same age and education as Plaintiff, who was at most, capable of sedentary work, including telephone surveyor, unskilled, with 32,360 positions available in the national economy, and 364 in the Western New York region (R. 64), and telephone marketing and solicitation, semi-skilled, with 343,275 positions in the national economy, and 1,106 positions available in the Western New York region.  (R. 65).  As

Plaintiff does not contest the ALJ's determination regarding Plaintiff's suitable alternative employment, the undersigned does not proceed to review this step of the ALJ's disability determination.

## **CONCLUSION**

Based on the foregoing, Defendant's motion should be GRANTED, Plaintiff's motion should be DENIED, and the Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 26, 2015
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 26, 2015
            Buffalo, New York